May it please the court, Eric Multop on behalf of petitioner and appellant Charles Statler. Here we have a homicide which consisted of one blow, one fatal blow, struck in anger with a frying pan. The criminal consequences of this fatal act under the laws of California were either second degree murder or involuntary manslaughter. The undisputedly rogue instruction given here effectively directed the verdict for the prosecution with respect to second degree murder. Our first argument set forth in the briefs is that the California Court of Appeal opinion was an unreasonable application of the Griffith and Stromberg line of cases which require automatic reversal where there are two theories given to the jury, one constitutional, one unconstitutional, and the record does not show how the jury reached its verdict. That part of the argument is brief, and I would just like to refer again to this court's recent decision in Paolo Vigalazza applying a per se reversal standard to an effectively directed verdict as to an element of the offense. What I would like to focus on for a few minutes here is that even if we go to the Brecht standard for harmless error, this has to be a case of reversible error because the California Court of Appeal and the district court unreasonably applied the applicable law to the facts. The district court followed the California Court of Appeal saying that no reasonable juror could possibly have failed to find implied malice under the facts of this case. That is just an unreasonable application of the law to the facts, and here are the two points that prove it most clearly. The prosecutor introduced evidence of appellant statement to the police following the crime, at which time he repeatedly said, I didn't mean to hit him as hard as I did, I guess. I didn't realize that what I had done to him, and I didn't think I had swung hard enough to kill him. Those statements are all inconsistent with the element of implied malice under California law. Those statements by themselves raise a triable issue of fact as to whether appellant harbored implied malice at the time of the single fatal blow struck in anger. What is your understanding of the meaning of implied malice under California law? Well, my understanding is pretty much exactly congruent with that set forth in the jury instruction, which the defendant has to personally recognize that the act to be engaged in creates a grave danger to life, and with conscious disregard of that danger, goes ahead and does it, commits the act. So you didn't actually mean to kill someone doesn't negate implied malice. You don't have to specifically intend a death, correct? No, that doesn't conclusively rebut implied malice, but those statements go a long way to showing that he didn't appreciate that hitting somebody with a frying pan was dangerous and he was going to do it anyway. Look, if I may, if appellant had made a statement to the police saying, I was so tired of that guy, I picked up the frying pan, I knew this was a deadly weapon, and I said, heck with it, and I hit him. Now, there is your implied malice. These statements are very, very different from that. The defendant is saying to the police, well, I didn't realize this was going to happen. I had no conscious appreciation that this was a life-threatening act. There's a triable issue of fact there that was taken away from the jury. Now, I'd like to make one other remark that was not addressed in any of the court of appeal, California Court of Appeal, or the district court, which in my opinion clearly, if not conclusively, shows there was a triable issue of fact here that can't be resolved by an appellate harmless error standard. Now, who in the judicial system is the best proxy for a reasonable juror in determining whether there was a reasonable doubt as to implied malice, which would make it an involuntary manslaughter? I submit to this court that when a trial court tried this case, agreed to instruct on involuntary manslaughter without objection from the prosecution, that shows that the evidence presented was ambiguous as to whether this was a second-degree murder or whether it was an involuntary manslaughter. That shows that the people closest to the evidence, the trial judge, the prosecutor, will leave the defense attorney out there because he had an institutional stake in having an involuntary manslaughter instruction, but the other two didn't. They were calling it much straighter, and they agreed to instruct on involuntary manslaughter. If there was no evidence whatsoever to support a verdict of involuntary manslaughter and the only evidence available conclusively showed implied malice and second-degree murder, then the trial court would have said, I'm sorry, defense counsel, you don't get your instruction on a lesser-included offense, but all the relevant actors in the trial viewed this as a question of fact. Now, it's an unreasonable application of the law for the California Court of Appeal to ignore that and for the district court to say that no reasonable juror could possibly have found a lack of implied malice under the facts of this case. I know we have a short argument here. I'd like to reserve a few minutes in the remaining time for rebuttal, Your Honor. Unless there are questions from the Court at this point. Thank you, counsel. May it please the Court. Peggy Ruffray, Deputy Attorney General for Respondent. The threshold question in this case is what is the clearly established Supreme Court law, and the problem with this case is that there are two parallel lines of Supreme Court law. And there's one line that says that if you give two instructions and one is unconstitutional and one is and you can't tell which one the jury relied on, it's automatic reversal. That's correct. That's the Stromberg-Griffin line of cases. And you think that line is undermined by any case that says what happens when you have two instructions, one constitutional, one unconstitutional? Yes. I'm not sure if undermined is the right word, but it's certainly thrown into doubt by the Nieder line of cases. Isn't there a rule that if it's only thrown into doubt, that I think Judge Graber quoted it yesterday, that we have to wait to let the Supreme Court overrule a case just because they've raised doubts about it, that we can't say it's overruled until they do it? Well, for purposes of the ADPA, the question is if it's clearly established. And in the Keating case, this Court acknowledged that there was a tension between the Griffin type line of cases and the California v. Roy and the Nieder type kind of cases. But Nieder dealt with a different fact situation, did it not? Well, yes, it dealt with a different fact situation, but in the list of what constitutes structural error, it did not mention the Griffin cases. It said, here's what we believe are the structural error kinds of cases. And it listed an impartial judge, not an impartial judge, and no counsel in all of those. It has never mentioned Griffin as one of those types of cases. And you regard that statement as dealing with the exclusive set, that it's definitive, that it says no other possibilities? Not necessarily, but it's telling that it has never been mentioned. It wasn't mentioned in Arizona v. Fulminante, which might have been an exclusive list. It wasn't mentioned in Johnson. It wasn't mentioned in Nieder. But more to the point, that is the situation that's presented to the California Court of Appeal. They've got the Griffin line of cases, and they've got the Nieder one. Which is a square precedent, and they've got another that may cast some cloud on that, right? Yes. And what I think that the most instructive Supreme Court case on how to go about analyzing this is Lockyer v. Andrade. That was a case where the defendant was saying, here's the clearly established Supreme Court law. It's Solemn v. Held. And the other side was saying, well, what about these other two Supreme Court cases? They cast doubt on that. And what the Supreme Court said was, where we haven't, where our cases exhibit a lack of clarity, or to quote, where they haven't established a clear or consistent path for the courts to follow, then there's no clearly established law. And I think that's exactly the case here. There isn't any consistent law. Again, as the Court acknowledged in Keating, we don't know how to resolve that tension. It all depends on what you're looking at. There's clear and consistent law about what you do if there are two jury instructions, one constitutional, one unconstitutional. That's true. It may be true in any way that the Supreme Court is inconsistent with its rationale in when it decides other types of cases. I mean, that would not be a remarkable occurrence if there were a lack of consistency in Supreme Court decisions or in any court's decisions. But if you look at it in terms of have they been consistent in what they said to do when you have this particular situation? The answer would be yes. I disagree with all due respect, Your Honor. I think if you look at Nieder, what the Court said was we're not going to look at how an instructional error is classified because you could just as easily classify something as a misdescription or as an omission or as a rebuttable presumption or whatever. And that's what the California State Court and the district court in this case held. They said that this kind of error could just as easily be described as an omission because what was happening in effect, if you draw the worst possible inference, was that the jury was not required to make a finding on implied malice. Because that was a single act. In other words, if there had been multiple predicate acts to a felony murder, a rape or a robbery, and you couldn't tell whether the jury was unanimous, that would be, I assume even under your construct, problematic. But because there was a single act, the effect of it, you're saying, is that there's an intent instruction missing, but otherwise it's okay. Correct. Because if they found the assault and the malice, then guilt follows from that. Correct. And there's some other courts, a First Circuit court, that case that I cited in my brief, where the court said it seems absurd to say that where there are two theories and one is wrong and one is right, that that is somehow worse than when there is only one bad instruction. That's an example of how the Griffin rule can't be said to be clearly established for purposes of this. But the courts are struggling with it. The dissent in Keating said it was a conundrum. So in light of that, we don't know how they intersect. Well, it's only a conundrum once you try to rationalize two different types of cases. When you try to rationalize cases with two acts or two instructions, one constitutional, one not constitutional, you can say this court may not be very rational, but you don't have any trouble saying that in those cases, this is what they said, and we may say it doesn't make much sense, which may be true of other Supreme Court cases we think don't make much sense. But we are required to follow them until they're overruled. But Nieder suggested that they are at the same time. They could have overruled. Not suggested. I said we're required to follow them until they tell us, until they overrule them, not until we decide they don't make a lot of sense. But, again, that might be true in a direct appeal context. But the question here is what is clearly established? And I think this discussion shows that there is a question, a legitimate question that has been raised. It shows you there's a question. But it doesn't show me there's a question. Well, the court of appeal. But you're saying that the state courts are not required to follow Supreme Court law until it's overruled. They are free, unlike in direct appeals. We would have to follow it. No, no, certainly the state courts are required to follow that. And that's what the state court of appeal did in this case. They believed that the Griffin line of cases had to be read in light of ongoing case development, including Nieder. They specifically cited Nieder. And what Nieder suggested was that this is they are similar kinds of cases because it could just as easily be categorized as an omission, which everybody agrees is subject to harmless error analysis. Neither could easily have said, could it not, we overrule Griffin. It no longer makes sense in light of what we're saying today. Well, it wasn't directly a fact in the case, so it would have been dicta. That's never stopped them before, has it? I'm sorry? That's never stopped them before, the fact that it's dictum. Well, that's true. But for our purposes here today, I think that I've made my point that there is a legitimate question when it's not clearly established because the courts haven't established this. You don't have much time left. Do you want to spend a little time on your second point? Yes, exactly. Thank you. We'll give you an extra couple of minutes. The harmless error argument. First, I'd like to remind the court that this wasn't simply a whack with a frying pan. It was a cast iron skillet. The victim was an elderly 68-year-old man who was about five feet tall. I'm sorry? Careful. Well, he was in very poor health, unlike this court, I'm sure. He was only 130 pounds. He was hunched with age, and the defendant was a strapping young 36-year-old who was 6'3", 180 pounds, and the state court described this as a crashing blow to the head of this man with a cast iron skillet that was so hard it broke the handle off the skillet. It fractured the victim's skull in two places. It severed his spine and drove his head down into his neck. Those are the facts of what happened in this case, and what the state court found beyond a reasonable doubt and what the district court found under the Brecht standard was that no reasonable juror looking at those facts could have found that that was not implied malice, that there was not a conscious disregard, a knowledge of the danger, and a conscious disregard for life when he committed that kind of an act. Now, the fact that the defendant said he didn't mean to kill him is irrelevant. That's what the Shackelford case said. It was a very similar situation. The defendant also claimed he didn't intend to kill the victim. Well, that may go to express malice, but that's the whole definition of implied malice, that you don't have a desire to kill, but you're still acting with conscious disregard. He said more than he didn't mean to. He said he didn't think it would have that effect. No, he said, I didn't intend to kill him, and I didn't mean to hit him as hard as I did, I guess. It was something along those lines. That's what the defendant said. He never indicated that he didn't comprehend that that kind of a blow could have the natural consequence of causing the victim's death. And finally, on the question of whether the fact that they were involuntary manslaughter instructions given as well, those were given because one of the defenses was self-defense, one was unreasonable self-defense. You had to give involuntary manslaughter because that was what you get if they bought the unreasonable self-defense argument. Those instructions were not given because there was some question about the intent for implied malice. Again, the defense was self-defense. The question was never raised that he somehow acted without conscious disregard. That simply wasn't an issue in the case. He was going for an acquittal. There was all this evidence introduced that the defendant, that the victim had come at him with a knife solely from his words, and that was what he relied on as a backup. He wanted unreasonable self-defense, which would have given him involuntary manslaughter. Would that component of his attempted defense bear upon the question of implied malice, that is, limiting the realization that this weapon, this iron skillet, could cause the consequences that it did? That is, when it's done in the heat of the moment, I'm simply asking, if you accept arguendo the defendant's position, would that bear on implied malice also? I'm not quite sure of your question. It sounds like you're asking about voluntary manslaughter, which the parties agreed was not going to do. Oh, no, no. What I'm saying is if the circumstances were a sort of heat of the moment circumstance in which somebody's coming at you with a knife and you grab this skillet and deliver a crushing blow, could that bear as well on the issue of implied malice in terms of not the matter of intent, but the other considerations? I don't really think so, if I understand your question correctly, because the question is simply when you perform that act, whether it's a reaction to someone coming at you with a knife or whatever, when you perform that act, do you understand that it's dangerous to human life and that you're acting with a conscious disregard for it anyway? Even though you're acting in a split-second kind of reaction to someone attacking you. Well, even first-degree murder expressed and deliberate and premeditated murder can happen in a split-second reaction. But what the courts, all the courts to look at this have found, again, is that no rational juror could have found under the particular circumstances of this case, which I described, that he was not acting with implied malice. We think that he received a fair trial and the judgment should be affirmed. Thank you. Thank you, counsel. Thank you. My last brief comment is that the record here does have ample evidentiary ambiguity about what was in Appellant's state of mind at the time he delivered this blow. It is not a correct harmless error analysis to reason backwards from the extent of the injuries to impute implied malice to the defendant because the question was, if the defense is that he didn't anticipate the homicidal outcome, the fatal outcome, it's irrational to reason back from the consequences to what was in the state of mind at the time he inflicted the blow. Where he's saying to the police, and this is quoted in its entirety on AOB 28, where he's saying to the police, I didn't think I swung hard enough to kill him. That's inconsistent. That statement is inconsistent with saying, I thought I might kill him and I did it anyway. Those two are just inconsistent statements, creating a triable issue of fact here. There are just not enough frying pan skillet homicides in the country for a court to rationally conclude that anybody who hits somebody in the head with a frying pan necessarily means necessarily disregards the fatal possible fatal consequences. This is a tragic homicide to be sure, but whether it was an involuntary manslaughter or second degree murder was a question for the jury and that question was never resolved. We'll submit it on that, Your Honor. Thank you. Case just argued will be submitted.
judges: Reinhardt, Graber Shadur